| iWILLIAM N. KNIGHT, Judge Pro Tem.
The defendant, Poker Games, Inc. (Poker Games), appeals from a rule to evict it from the establishment owned by the plaintiff, SLEM, Inc. (SLEM). We affirm.
FACTS
SLEM owns and operates Mel’s Diner (Mel’s), which is located at 2956 Johnson Street in Lafayette, Louisiana. Poker Games provided three video poker gaming devices to SLEM for operation at Mel’s under a license issued to SLEM.
On January 23, 1995, SLEM sent written notice to Poker Games that the video poker gaming devices were going to be turned off by the Video Gaming Division, Department of Public Safety, Louisiana State Police and that the company should remove their devices from Mel’s prior to January 30, 1995. In a letter dated January 27, 1995, Poker Games through its counsel refused to do so. On February |z17, 1995, SLEM filed a “Rule to Evict Occupant” in the district court. The video' poker machines remained at Mel’s through the time of the hearing. However, the State Police turned the machines off on or about January 28,1995.
SLEM’s rule to evict was granted by the district judge on March 13, 1995. The judgment ordered Poker Games to deliver possession within twenty-four hours of the rendition of the judgment. Poker Games’ application for new trial was denied on March 14, 1995. On that day Poker Games filed a motion for a suspensive appeal or alternatively a devolutive appeal. The sus-pensive appeal was denied pursuant to La. Code Civ.P. art. 4735. This court denied Poker Games’ writ application regarding the trial court’s denial of its motion for suspen-sive appeal. See Stem, Inc. v. Poker Games, Inc., 95-0743 (La.App. 3 Cir. 5/5/95), writ denied 95-1391 (La. 6/6/95); 655 So.2d 330.
In its appeal from the judgment of eviction, Poker Games alleged the following assignments of error:
1. The trial court erred in failing to dismiss appellees/plaintiffs’ suit for eviction because it had wrongfully evicted appellant/defendant by having the video poker machines turned off prior to serving defendant/appellant with the proper notice to vacate.
2. The trial court erred in failing to dismiss appellees/plaintiffs’ eviction proceeding because appellees/plaintiffs’ vitiated the Notice to Vacate and/or reconducted the lease by the acceptance of the rentals after having forwarded the Notice to Vacate to appel-lani/defendant.
*1116 3. The [t]rial [c]ourt erred in not dismissing appellee/plaintiffs’ eviction proceeding because it failed to provide appellant/defendant with proper notice under LSA-C.C.P. Article 4701 (Written Contract) and/or Articles 4701 (Oral Contract).
4. The [t]rial [cjourt erred in not sustaining Appellant/Defendant’s Exceptions.
5. The trial court erred in allowing evidence and testimony to bejjintrodueed into trial which may have served to expand the pleadings.
6. The trial court erred in not dismissing appellees/plaintiffs’ petition for eviction, finding that appellant/defendant had been wrongfully . evicted, and awarding damages to appellant/defendant for wrongful eviction.
RECONDUCTION OF THE LEASE
By its second assignment of error, Poker Games alleges that the trial court erred in failing to dismiss the eviction proceeding filed by SLEM because SLEM vitiated the notice it gave to Poker Games by accepting rent after forwarding the notice. At the crux of the issues raised by this assignment is the kind of contract that existed between Poker Games and SLEM. Poker Games contends that the written contract executed between its representative and Jack Naumann controls the relationship between it and SLEM. SLEM contends that the agreement between the parties was an oral one. In his reasons for judgment, the trial judge stated he found “that there was an oral contract between the plaintiff and the defendant with no specific term, i.e., one ‘at will,’ and with that the plaintiff is entitled to eviction in this matter.”
Poker Games contends that the written contract, executed on June 4, 1992, controls its relationship with Mel’s. At that time, neither SLEM, nor Mel’s was in existence and the location Mel’s occupies was a Kettle restaurant, which was run by Jack Naumann as a franchisee. Naumann terminated his franchise with the Kettle organization and in May of 1994, acquired the lease for the former Kettle location at 2956 Johnston Street for SLEM.
The written contract in question was prepared by Poker Games and is entitled “Participation Agreement.” In its first paragraph the contract provides:
This Agreement is between Poker Games, Inc. a Louisiana | corporation or its assigns (the “Device Owner”) and Jack Naumann at 2106 N.E. Evangeline Thy. Lafayette (sic) Louisiana, (the “Licensed Establishment”).
The trial judge found that this contract, which was drafted by Poker Games, specifically indicated the location it applied to as 2106 N.E. Evangeline Thruway and could not be construed to apply to any other locations, including the location on Johnson Street which subsequently became Mel’s.
Looking at the written contract as a whole, we agree that it does not explicitly name the Mel’s location, nor does it indicate by other language that it was meant to apply to locations other than the one named. Since by its plain language the written contract does not apply to Mel’s, any attempt to interpret the contract to cover Mel’s would be improper. See La.Civ.Code art. 2046.
Alternatively, Poker Games’ counsel alleges that there was an oral contract of lease between it and SLEM and that the terms were the same as those in the written contract. Terrill Sherrick, the general manager of Poker Games, testified that there was an oral agreement with the same terms as the written contract. However, Pat Dibble, an officer of Poker Games, testified that the written contract covered Mel’s and there was no other contract. Jack Naumann testified that the contract was an “at will” contract with no specified term. The trial judge accepted this testimony and ruled accordingly, finding that no specific term existed for the contract between Poker Games and SLEM.
Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where there is conflicting testimony. Stobart v. State through Department of Transp. and Development, 617 So.2d 880 (La.1993). Considering the contradictions in the testimony given by Poker Games’ ownjjwitnesses, a reason *1117 able bastó for the trial court’s credibility evaluation exists in the record.
La.Civ.Code art. 2674, entitled “Lease of things” provides that:
To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him.
Without a specified term, a contract of lease does not exist. La.Civ.Code art. 2674. We find that the trial court’s determination that the contract between the parties was an “at will” contract was not manifestly erroneously. Therefore, we find that no contract of lease of any Mnd existed. Seemingly, the parties entered into some kind of innominate business contract in which SLEM accommodated Poker Games as an occupant of their premises.
Since we found that the trial court did not err in finding the contract was an “at will” contract and did not have a term, no contract of lease can exist pursuant to La.Civ.Code art. 2674. Therefore, we do not find that the trial court erred in holding that acceptance of revenues from the video poker gaming machines which accrued after the notice of eviction failed to reconduct the non-existent lease. This assignment of error is without merit.
PROPER NOTIFICATION
By its first, third and sixth assignments of error, Poker Games contends that the trial court erred by not dismissing SLEM’s eviction proceeding for failure to provide it with proper notice under La.Code Civ.P. art. 4701 and in failing to dismiss the suit for eviction due to wrongful eviction by having the video poker gaming machines turned off prior to serving the proper notice to vacate. Article 4701 provides that a lessor shall cause written notice to vacate the premises to be delivered to the lessee and allow not less than five days from the date of its delivery |sfor the lessee to vacate the premises. As noted above, we have found that there was no contract of lease between the parties. Therefore, this article is inapplicable.
However, La.Code Civ.P. 4702 provides that the owner of immovable property must provide written notice to vacate to be delivered to the occupant of his property and allow the occupant five days from its delivery to vacate the premises. The definition of occupant in La.Code Civ.P. art. 4704 includes any person occupying immovable property by permission or accommodation of the owner and thus, includes Poker Games. Therefore, the five day period from the time of receipt of notice until eviction is still applicable.
The notice to vacate the premises was sent to Poker Games on January 23,1995. Poker Games responded to the notice in a letter dated January 27, 1995. The rule to evict was heard on March 13, 1995. At this time, Poker Games’ video poker gaming machines, though turned off, still occupied Mel’s Diner. Obviously, more than five days had elapsed since the receipt of the notice of eviction. The trial court did not err in granting SLEM’s rule to evict.
Poker Games argues that they were constructively evicted on January 28, 1995, when the State Police turned off the video poker gaming machines. Even if such an act constitutes constructive eviction, which we do not rule on today, it does not constitute lawful cause to support denial of the rule to evict. Rather, Poker Games’ remedy is one for damages which is an inappropriate issue for the summary eviction proceeding. La. Code Civ.P. art. 2592. A petition for damages for wrongful eviction is an ordinary action. Therefore, we find that these assignments of error are without merit.
EXCEPTIONS
By its fourth assignment, Poker Games contends that the trial court erred in 17failing to sustain its exceptions. Prior to the hearing on the rule to show cause, Poker Games filed a dilatory exception of unauthorized use of summary proceedings and a peremptory exception of no cause of action. Poker Games included a request for damages for wrongful eviction along with its exceptions.
La.Code Civ.P. art. 2592(3) allows the use of summary proceedings for an issue which may be raised properly by an exception, con *1118 tradictory motion, or rule to show cause. La.Code Civ.P. art. 4731 A, allows the use of summary proceedings by a rule to show cause where after proper notice to vacate has been served and the right of occupancy has been lost for any reason. La.Code Civ.P. art. 4702 allows the eviction of an occupant of immovable property after the purpose of the occupancy has ceased, where written notice to vacate the property has been delivered to the occupant and five days allowed for vacation of the property. In the present case, proper notice to Poker Games was sent on January 23, 1995. A letter dated December 28, 1994, was also introduced at trial, which indicated that Mel’s had been issued a license to operate its own video poker gaming machines by the State of Louisiana. The earlier license allowed Mel’s to operate the video gaming machines owned by Poker Games. This indicates that the purpose for the occupancy ended as early as December of 1994. The summary process was not used inappropriately by SLEM.
The purpose of the exception of no cause of action is to determine whether the law affords any remedy to a plaintiff under the conditions alleged in the petition. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993). An exception of no cause of action may be sustained only when it is clearly shown that the law affords no remedy to anyone for the particular grievance alleged. Law v. City of Eunice, 626 So.2d 575 (LaApp. 3 Cir.1993). SLEM alleged a cause of |8action when it filed its rule to evict and in fact is entitled to the eviction it requested. Therefore, the trial judge did not err in failing to sustain this exception.
Finally, Poker Games requested that damages be awarded. This request is neither a proper request for an exception, nor is it a proper request for a summary proceeding as previously discussed in this opinion. Therefore, we find this assignment of error is without merit.
EVIDENCE
By its fifth assignment, Poker Games alleges that the trial court erred in allowing evidence and testimony to be introduced into trial which may have served to expand the pleadings. The evidence and testimony complained of addressed the two letters sent by SLEM requesting removal of the video poker gaming machines from Mel’s. The first letter, dated February 24,1994, is addressed to Dibble as president of Poker Games. It states that in a prior conversation Dibble agreed to remove the video poker gaming machines on March 8, 1994, but that Poker Games failed to provide the proper paper work, and that Sherrick has threatened at least 30 days delay before removal of the machines. The second letter, dated December 28, 1994, is addressed to Sherrick and informs him that Mel’s had been issued a license to operate its own video poker games machines. These letters were relevant in that they reflect the understanding Naumann had of the business relationship between the parties. The December 1994 letter also evidenced the cessation of the cause for the occupancy. We find that the introduction of the letters and the testimony about the letters did not expand the pleadings. Therefore, we find that this assignment is without merit.
|9DECREE
The trial court judgment is affirmed. All costs on appeal are assessed to the defendant-appellant, Poker Games.
AFFIRMED.